UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID P.[1], | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:19-cv-03514-JPH-MPB ) |
| ANDREW M. SAUL Commissioner of the Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff David P. seeks judicial review of the Social Security Administration's decision denying his petition for Supplemental Security Income. He argues that the ALJ's decision is unsupported by substantial evidence because the ALJ: (1) failed to properly acknowledge that Plaintiff must be able to keep a job, (2) failed to properly consider Plaintiff's treating psychiatrist's opinion, (3) failed to properly address Plaintiff's limitations in maintaining concentration, persistence or pace, and his ability to interact with others, and (4) failed to adequately address Plaintiff's subjective symptoms. *See* dkt. 7 at 3–4. Because the ALJ failed to properly consider Plaintiff's treating psychiatrist's opinion, the decision is **REVERSED and REMANDED**.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

# I.
# Facts and Background

Plaintiff was 41 years old as of the application date. Dkt. 5-2 at 31. He did not complete high school and has no past relevant work. Dkt. 5-2 at 45-48. Plaintiff alleges problems with diabetes, bipolar, posttraumatic stress disorder ("PTSD"), attention deficient hyperactivity disorder ("ADHD"), back pain, and possible neuropathy. Dkt. 5-2 at 25. Those conditions caused limitations in standing, walking, lifting, concentration, memory, and interacting with others. *Id.* at 5-6, 10-11, 17.

Plaintiff applied for Supplemental Security Income in November 2015 with an alleged onset date in February 2012. Dkt. 5-2 at 19. Plaintiff's application was denied initially and upon reconsideration. *Id.* Administrative Law Judge Kevin Walker held a hearing in January 2018, dkt. 5-2 at 38, and issued a decision denying Plaintiff's claims in June 2018. Dkt. 5-2 at 33. The Appeals Council denied review in June 2019. Dkt. 5-2 at 2. Plaintiff then brought this action asking the Court to review the denial of benefits under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). Dkt. 1.

In his decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. § 404.1520(a)(4) and concluded that Plaintiff was not disabled. Dkt. 5-2 at 21-32. Specifically, the ALJ found that:

- At Step One, Plaintiff had not engaged in substantial gainful activity[2] since the alleged onset date. Dkt. 5-2 at 21.

---

[2] Substantial gainful activity is defined as work activity that is both substantial (involving significant physical or mental activities) and gainful (usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Two, he had "the following severe impairments: bipolar disorder, PTSD, ADHD, degenerative disc disease, carpal tunnel syndrome, bilateral knee issues, depression, anxiety, and obesity with body mass index of 32 kg/m² (20 CFR 416.920(c))."  Dkt. 5-2 at 21.

- At Step Three, he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Dkt. 5-2 at 22.

- After Step Three but before Step Four, he had the RFC "to perform light work . . . except he can occasionally lift and carry 50 pounds; frequently lift and carry 25 pounds; push/pull unlimited except for the weights indicated; stand or walk for up to six hours per eight-hour workday; sit for six hours per eight-hour work day; frequently climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl.  There should be no exposure to concentrated vibration.  He can frequently operate foot controls, bilaterally.  The claimant is able to understand, carry out, and remember simple, routine, and repetitive tasks; involving only simple, work-related decisions; with few, if any, work place changes; and no fast-moving assembly line-type work.  The claimant cannot tolerate interaction with the public.  He can be around coworkers throughout the day, but only with brief, incidental interaction . . . and no tandem job tasks requiring cooperation with coworkers."  Dkt. 5-2 at 23.

- At Step Four, Plaintiff has no past relevant work.  Dkt 5-2 at 31.

- At Step Five, considering Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy" that he can perform.  Dkt. 5-2 at 31.

In making his RFC determination, the ALJ rejected an opinion from Dr. Marina Bota, Plaintiff's treating psychiatrist.  Dkt. 5-2 at 30.  Plaintiff had been a patient of Centerstone since 2010 and had been treated there by Dr. Bota since 2015.  Between October 2015 and June 2017, Dr. Bota saw Plaintiff approximately 17 times, about once a month.  Dkt. 5-8 at 12; dkt. 5-9 at 6, 12, 19, 25, 31, 37, 43, 49, 55, 61, 66, 71, 76, 81, 86, 91.

3

On October 21, 2015, Dr. Bota filled out a "Statement of Medical Condition for Determination of Participation in the Impact Program." Dkt. 5-8 at 12. On this form she found that Plaintiff is "totally unable to participate in training activities/employment due to physical and mental limitations," noting this as a permanent condition. *Id.* She also found that he was able to stand, walk, and lift each one to two hours. *Id.* Further, she found that Plaintiff was diagnosed with Bipolar Disorder, PTSD, ADHD, diabetes, and back pain and that the prognosis for his Bipolar Disorder and PTSD was "guarded." *Id.*

In November 2016, Dr. Bota again noted Plaintiff's diagnoses of Bipolar Disorder, PTSD, and ADHD and that he "presented with diabetes and back pain." Dkt. 5-7 at 44. She also noted that Plaintiff "presents with active symptoms of his PTSD and Bipolar Disorder," and added that he "is highly paranoid, has auditory and visual hallucinations, delusional thoughts, severe anxiety, [and] memory and concentration problems." Dkt. 5-7 at 44. Further, she found that he is "withdrawn, isolated, and becomes highly anxious around people." *Id.* She concluded that he "is not able to work due to his emotional [sic] at this time," and that "it is likely that he will be unable to work for more than two years." *Id.*

## II.
## Applicable Law

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton,* 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts." *Id.* at 217.

4

First, it requires an inability to engage in any substantial gainful activity. *Id.* And second, it requires a physical or mental impairment that explains the inability and "has lasted or can be expected to last . . . not less than 12 months." *Id.* "The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue,* 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274.

When an applicant seeks judicial review, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In evaluating the evidence, the Court gives the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong." *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g). The burden of proof is on the claimant for Steps One through Four but shifts to the Commissioner at Step Five. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the benefit denial. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
## Analysis

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence because the ALJ: (1) failed to properly acknowledge that Plaintiff must be able to not only find but keep a job, (2) failed to properly consider Plaintiff's treating psychiatrist's opinion, (3) failed to properly address Plaintiff's limitations in maintaining concentration, persistence or pace, and his ability to interact with others, and (4) failed to adequately address Plaintiff's subjective symptoms. *See* dkt. 7 at 3–4. Because the ALJ's failure to properly acknowledge the treating psychiatrist's opinion requires remand, Plaintiff's other arguments are not addressed.[3]

Under the treating-physician rule, an ALJ must give controlling weight to the medical opinion of a treating source if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *see also Scrogham v. Colvin*, 765 F.3d 685, 696 (7th Cir. 2014) (treating sources are "likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments"). An opinion on an issue reserved to the Commissioner is not a medical opinion, and thus is not given controlling weight. 20 C.F.R. § 416.927(d); *Richison v. Astrue*, 462 F. App'x 622, 625 (7th Cir. 2012). However,

---

[3] Plaintiff also argues that the ALJ did not properly evaluate the opinions of treating sources therapist Mr. Tabacchi and nurse practitioner Ms. Rund. The Court does not address this argument because the ALJ's evaluation of Dr. Bota requires remand.

those opinions may not be ignored and still must be considered in determining the claimants RFC. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).

If the ALJ decides not to give controlling weight to a treating physician's opinion, he is "not permitted simply to discard it." *Scrogham*, 765 F.3d at 697. Rather, the ALJ is required by regulation to consider the following factors in deciding how much weight to give the opinion:

- the "[l]ength of the treatment relationship and the frequency of examination,"
- the "[n]ature and extent of the treatment relationship,"
- "[s]upportability,"
- consistency "with the record as a whole," and
- whether the treating physician was a specialist in the relevant area.

20 C.F.R. § 404.1527(c)(2)-(5); *Scrogham*, 765 F.3d at 697. "If the ALJ discounts a treating source's opinion after considering these factors," the decision will stand "so long as the ALJ 'minimally articulated' his reasons." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

Plaintiff argues that the ALJ erred in dismissing Dr. Bota's statements "in their entirety." Dkt. 7 at 25. The Commissioner responds that "[t]he ALJ correctly noted that [Dr. Bota] offered conclusory opinions that Plaintiff was unable to work, which were entitled to no weight because the issue . . . is reserved to the Commissioner." Dkt. 13 at 17. The Commissioner also argues that, "[t]o the extent any functional limitations could be found in [Dr. Bota's] opinion, they were not supported by [her] own treatment notes." Dkt. 13 at 18. In support of this, the Commissioner says that, "as the ALJ noted, Dr. Bota wrote in her statement that Plaintiff suffered from hallucinations and

8

delusions," but "consistently noted in mental status examinations that Plaintiff *did not* have hallucinations or delusions." *Id.* (emphasis in original).

The ALJ stated that he gave no weight to Dr. Bota's assessments because they "are conclusory and statements as to the claimant's ability to work and the duration of such inability are reserved to the Commissioner." Dkt. 5-2 at 30. Even though Dr. Bota was Plaintiff's treating psychiatrist, the ALJ did not analyze any of the factors listed in 20 C.F.R. § 404.1527(c)(2)-(5) and did not "minimally articulate" his reasons. *Skarbek v. Barnhart,* 390 F.3d 500 (7th Cir. 2004). The mere statement that he "also considered opinion evidence in accordance with the requirements of 20 CFR 416.927" is not enough. *Roddy,* 705 F.3d at 636 (noting that the ALJ was "required to provide a sound explanation for his decision to reject [the treating physician's opinion]"); *see also* 20 C.F.R. § 404.1527(d) ("We will always give good reasons . . . for the weight we give your treating source's opinion.").

While the ALJ is not required to "specifically outline his findings on each of these factors," his decision does not even "show[] that he considered them." *See McCullough v. Apfel*, 2000 WL 1657966 at *4 (Nov. 2, 2000) (affirming ALJ's decision). Unlike *McCullough,* where the ALJ noted the length of the patient-provider relationship, the claimant's activities, and contradicting doctors' assessments, the ALJ here did not perform *any* comparable analysis. *Id.*

An ALJ is not required to give controlling weight to a medical opinion if it is "inconsistent with the other substantial evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). Here, although the ALJ does not cite inconsistency

9

as a reason for giving Dr. Bota's assessment "no weight," dkt. 5-2 at 30, the Commissioner points out that the ALJ's decision referred to one apparent inconsistency. Dkt. 13 at 18. The ALJ referred to Dr. Bota and Mr. Tabacchi's medical reports and stated that it was "consistently noted in mental status examinations that Plaintiff *did not* have hallucinations or delusions," even though Dr. Bota wrote in her statement that Plaintiff suffered from hallucinations and delusions. Dkt. 13 at 18 (emphasis in original).

Based on this apparent inconsistency, the Commissioner contends that the ALJ properly gave no weight to Dr. Bota's assessment because "[t]o the extent any functional limitations could be found in [her] opinion[], [it] was not supported by [her] own treatment notes." *Id.* The ALJ's opinion states that "aside [from] appointments in March and August 2016, the claimant *denied* hallucination and delusions, and none were noted in mental status examinations spanning from 2015 through 2017." Dkt. 5-2 at 28 (citing Dr. Bota's records). But the record shows that Dr. Bota noted Plaintiff's hallucinations and delusions, dkt. 5-9 at 19, as she indicated in her assessment. Dkt. 5-9 at 19; dkt. 5-9 at 31; dkt. 5-7 at 44.

In any event, in his assessment of the opinion evidence, the ALJ did not cite inconsistency as a reason for discounting Dr. Bota's assessment. *See* dkt. 5-2 at 30. The ALJ noted only two reasons for discounting Dr. Bota's assessment.

First, he noted the "conclusory" nature of the assessment. Dkt. 5-2 at 30. However, the ALJ does not expand upon this or explain what prompted

10

him to conclude that Dr. Bota's assessments were conclusory. Furthermore, even if the ALJ properly discounted Dr. Bota's assessment of Plaintiff's hallucinations and/or delusions, he "neither considered nor explained [his] decision not to consider the rest of Dr. [Bota's] copious records." *Scrogham*, 765 F.3d at 696.

Specifically, the ALJ did not provide any explanation as to why he gave "no weight" to Dr. Bota's assessment that Plaintiff "presents with active symptoms of his PTSD and Bipolar Disorder," that he "is highly paranoid, has auditory and visual hallucinations, delusional thoughts, severe anxiety, and memory and concentration problems," or that he is "withdrawn, isolated, and becomes highly anxious around people."[4] Dkt. 5-8 at 44; *see Czarnecki v. Colvin*, 595 Fed. App'x 635, 642 (7th Cir. 2015) ("The ALJ did not explain why she seemingly ignored all but a few lines in [the treating doctor's] opinion, leaving [the court] unable to engage in meaningful review."); *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (noting that ALJ may not "select and discuss only that evidence that favors his ultimate conclusion").

Second, the ALJ discounted Dr. Bota's assessments because he found them to cover issues "reserved to the Commissioner." Dkt. 5-2 at 30. This is error. Although a statement by a medical source that a claimant is "'disabled' or 'unable to work' does not mean that" the SSA will determine that a claimant is disabled, 20 C.F.R. § 404.1527(e)(1), "[t]hat's not the same thing as saying

---

[4] Because the ALJ did not give Dr. Bota's assessments any weight, it is not clear that the ALJ included these limitations in her RFC analysis.

11

that such a statement is improper and *should be ignored*," *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (emphasis added); *see also Roddy*, 705 F.3d at 638 (noting that even if the doctor's opinion about claimant's ability to work is not a "medical opinion under the regulatory checklist," that does not mean that the ALJ should have ignored it). Here, the ALJ did just that.

Further, the ALJ did not even mention Dr. Bota's conclusion that Plaintiff had a permanent condition that made him "totally unable to participate in training activities/employment due to mental or physical limitations." Dkt. 5-7 at 12. "Even though the ALJ was not required to give [Dr. Bota's] conclusion controlling weight, he was required to provide a sound explanation for his decision to reject it." *Roddy*, 705 F.3d at 636 (noting that the ALJ's failure explicitly to address the doctor's opinion about claimant's ability to work is "especially troubling" when doctor was claimant's treating physician).

Finally, the Commissioner cites *Liskowitz v. Astrue* to argue that it is the ALJ, not a reviewing court, who determines how to resolve competing opinions. 559 F.3d 736, 742 (7th Cir. 2009). But the ALJ must "minimally articulate" his reasons when resolving these competing opinions, and he failed to do so here when he discounted Dr. Bota's opinion.

## IV.
## Conclusion

The Court **REVERSES and REMANDS** the ALJ's decision denying the Plaintiff benefits. Final judgment will issue by separate entry.

**SO ORDERED**

Date: 11/25/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Lindsay Beyer Payne
SOCIAL SECURITY ADMINISTRATION
lindsay.payne@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com